## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RYAN BATCHELOR and JANET BATCHELOR | : | CIVIL ACTION NO. |
| | : | 2:13-cv-01567-CDJ |
| v. | : | |
| | : | |
| ROSE TREE MEDIA SCHOOL DISTRICT | : | |
| 308 North Olive St., Media, PA 19063 | : | JURY TRIAL DEMANDED |
| and | : | |
| LINDA BLUEBELLO | : | |
| 80 Indian Spring Rd., Media, PA 19063 | : | |
| and | : | |
| ERIC BUCCI | : | |
| 1538 Freemont Dr., West Chester, PA 19382 | : | |
| and | : | |
| RALPH HARRISON, a/k/a NORMAN HARRISON | : | |
| 934 Prichard Ave., West Chester, PA 19382 | : | |
| and | : | |
| RICHARD GREGG | : | |
| 7814 Westview Ave., Upper Darby, PA 19082 | : | |
| and | : | |
| KAREN WALKER | : | |
| 127 Yates Ave., Woodlyn, PA 19094 | : | |
| and | : | |
| PATRICIA BARTA | : | |
| 90 Park Place, Media, PA 19063 | : | |

## AMENDED COMPLAINT

Plaintiffs, Ryan Batchelor ("Ryan") and Janet Batchelor ("Ms. Batchelor"), by and through their undersigned counsel, Lamm Rubenstone LLC, by way of Amended Complaint against Defendants, Rose Tree Media School District, Linda Bluebello, Director of Pupil Services for the Rose Tree Media School District, Richard Gregg, Principal of Penncrest High School, Eric Bucci, Assistant Principal of Penncrest High School, Ralph Harrison, Assistant Principal of Penncrest High School, Patricia Barta,

Director of Special Education, and Karen Walker, Special Education Teacher (collectively the "Defendants") aver as follows:

## NATURE OF THE ACTION

Ryan is a person with learning disabilities who was a student at Penncrest High School ("Penncrest"). While Ryan was a freshman at Penncrest, and in order to ensure that Ryan would receive a free and appropriate public education, the Rose Tree Media School District ("District") entered into a binding educational plan ("504 Plan") with Ryan and Ms. Batchelor whereby Ryan would receive needed educational assistance. However, when the District failed to implement the requirements of Ryan's 504 Plan despite repeated requests to do so, Ms. Batchelor was forced to sue the District for its failure to implement Ryan's 504 Plan. In September, 2010, the dispute between Ms. Batchelor, on behalf of Ryan, and the District was settled via a written Settlement Agreement whereby Ryan was to receive certain compensatory education services. Ever since the signing of the Settlement Agreement, Defendants, individually and in concert, have systematically discriminated and retaliated against Ryan and Ms. Batchelor for asserting their rights to a free and appropriate public education by failing to implement the terms of the Settlement Agreement and a subsequent Individualized Education Program ("IEP"). The discrimination and retaliation by teachers and administrators at Penncrest became so intense and so detrimental to Ryan's health and educational achievement that Ryan was forced to withdraw from Penncrest prior to the start of his senior year. Ryan enrolled at the Twenty First Century Cyber Charter School ("Twenty First CCC") for his senior year. Despite being a student at Twenty First CCC, the retaliation against Ryan by Defendants continued as Defendants have, in violation of the

District's own policies as well as state law, deprived Ryan of the ability to participate in extra curricular activities at Penncrest and refused to provide Ryan with the compensatory education services provided in the Settlement Agreement. This action arises from Defendants' intentional, harmful and outrageous discriminatory/retaliatory conduct toward Ryan and Ms. Batchelor for attempting to assert their legally protected rights under the Pennsylvania Human Relations Act and regulations implementing the Public School Code of 1949, 24 P.S. §§ 1-101- 27-2702 ("Public School Code").

## THE PARTIES

1.      Plaintiff, Ms. Batchelor, is an adult individual with a residence address of 2 Springton Lake Road, Media, PA 19063. At all times material hereto Ms. Batchelor was and is the mother of Ryan.

2.      Plaintiff, Ryan, is an adult individual whose primary residence is with his mother at 2 Springton Lake Road, Media, PA 19063.

3.      At all times material hereto, Ryan was and is an individual with documented learning disabilities, and as such, is entitled to the statutory protections of the Pennsylvania Human Relations Act 43 P.S. §§951-963 ("PHRA"), which expressly incorporates by reference Section 504 of the Rehabilitation Act, as amended, 29 U.S.C. §794(a) ("Section 504").

4.      Defendant, Rose Tree Media School District ("District"), is a municipal corporation body politic within the Commonwealth of Pennsylvania with a principal place of business at 308 North Olive Street, Media, PA 19063. At all times material hereto, the District was and is subject to the provisions of the PHRA.

5.      Defendant, Linda Bluebello, EDD, ("Dr. Bluebello") is, upon information and belief, an adult individual with a residence address of 80 Indian Spring Road, Media, PA 19063.  At all times material hereto, Dr. Bluebello was the Director of Pupil Services of Rose Tree Media School District.

6.      Defendant, Eric Bucci ("Mr. Bucci"), is, upon information and belief, an adult individual with a residence address of 1538 Freemont Drive, West Chester, PA 19382.  At all times material hereto, Mr. Bucci was an Assistant Principal at Penncrest High School.

7.      Defendant, Ralph Harrison, a/k/a/ Norman Harrison ("Mr. Harrison"), is, upon information and belief, an adult individual with a residence address of 934 Prichard Avenue, West Chester, PA 19382.  At all times material hereto, Mr. Harrison was an Assistant Principal at Penncrest High School.

8.      Defendant, Richard Gregg ("Mr. Gregg"), is, upon information and belief, an adult individual with a residence address of 7814 Westview Avenue, Upper Darby, PA 19082.  At all times material hereto, Mr. Gregg was the Principal of Penncrest High School.

9.      Defendant, Karen Walker ("Ms. Walker"), is, upon information and belief, an adult individual with a residence address of 127 Yates Avenue, Woodlyn, PA 19094. At all times material hereto, Ms. Walker was a Special Education teacher employed by the District.

10.      Defendant, Dr. Patricia Barta ("Dr. Barta), is, upon information and belief, an adult individual with a residence address of 90 Park Place, Media, PA 19063.  At all times material hereto, Dr. Barta was the Supervisor of Special Education for the District.

## JURISDICTION AND VENUE

11.     This action is brought exclusively under the statutory and regulatory protections of the PHRA and Public School Code.  This Court has no original subject matter jurisdiction with respect to Plaintiffs' entirely state law claims, nor is there any basis for an exercise of diversity jurisdiction.  Accordingly, this Court lacks subject matter jurisdiction over this Amended Complaint and this matter should be remanded to state court.

12.     Plaintiffs received a right to sue letter from the PHRC dated Feb 28, 2013, a true copy of which is attached hereto as Exhibit "A." Accordingly, Plaintiffs have exhausted their administrative remedies under the PHRA.

13.     Venue is not appropriate with this Court.  Rather venue is proper in the Court of Common Pleas for the County of Delaware, Commonwealth of Pennsylvania, because all defendants are subject to personal jurisdiction within Delaware County and the events giving rise to Plaintiffs' cause of action arose in Delaware County.

## STATUTORY AND REGULATORY SCHEME

14.     The IDEA requires that eligible students with disabilities receive a free, appropriate public education ("FAPE") via the development of educational plans developed and implemented pursuant to extensive procedural safeguards, the purpose of which is "to insure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. §1400(d)(1)(B).  At 22 Pa. Code §14.102(1) the IDEA is expressly incorporated into the Pennsylvania regulations giving effect to the Public School Code.

15.     The cornerstone of the IDEA is the Individualized Education Program ("IEP") which is a written document including, *inter alia*, the student's level of educational performance, annual educational goals, and specifically designed instruction ("SDI") to achieve those goals. 20 U.S.C. §1414(d)(2)(A); 20 U.S.C. §§1414(d)(1)(A), 1414(d)(4)(A). See also 34 C.F.R. §§300.340-300.350.

16.     The IDEA establishes an extensive mechanism for parental involvement in the development, implementation and modification of an IEP. 20 U.S.C. §§1414(d)(1)(B); 1415(b)(1); 34 C.F.R. §§300.44, 300.54(a).

17.     Section 504 protects eligible persons with handicaps from discrimination or the denial of services by programs receiving federal funds. 29 U.S.C. §794(a). Pursuant to Section 504 disabled public school students are entitled to receive educational support designed to meet the educational needs of the particular handicapped student. 34 C.F.R. §104.33(a)(b) and (c). At 22 Pa.Code §15.1(a) Section 504 is expressly incorporated into the Pennsylvania regulations giving effect to the Pennsylvania School Code.

18.     Section 504 expressly prohibits intimidation or retaliation against any individual for the purpose of interfering with any right or privilege protected by Section 504 or because the individual made a complaint regarding an alleged violation of Section 504. 34 C.F.R. §104.61; 34 C.F.R. §107(e). This includes retaliation against a parent for having assisted his or her child in obtaining rights protected by Section 504. *Id.*

19.     The ADA also prohibits discrimination and retaliation by public or private entities or persons acting in their individual capacity with respect to eligible persons with

disabilities.   42 U.S.C. §12132; 42 U.S.C. §12182; 28 C.F.R. §35.134; 28 C.F.R. §36.206.

20.     The PHRA prohibits discrimination and retaliation against students with disabilities, and the interpretation of the PHRA's requirements are consistent with federal court interpretations of the IDEA, ADA and Section 504. Accordingly, any discriminatory or retaliatory conduct by the Defendants which violates the ADA, IDEA and or Section 504 will also violate the PHRA and/or the Public School Code.

## FACTS COMMON TO ALL COUNTS

21.     On or about December, 2009, Ryan was for the first time diagnosed with a disability within the meaning of Section 504.

22.     On or about January, 2009, midway through Ryan's freshman year at Penncrest, the District developed a written 504 Plan for Ryan whereby he was to receive certain learning support.

23.     Pursuant to the 504 Plan Ryan was placed into an achievement center for added support and received additional counseling and tutoring.  With the assistance of his then guidance counselor, Mrs. Graham, this additional support continued throughout the remainder of Ryan's freshman year.

24.     At the start of his sophomore year at Penncrest Ryan was assigned a new guidance counselor, David Harpel ("Mr. Harpel").  Mr. Harpel did not schedule Ryan for the achievement center, nor did Mr. Harpel give any of Ryan's teachers a copy of Ryan's 504 Plan.  Accordingly, and unbeknownst to Ms. Batchelor, Ryan was receiving no support services and his teachers were unaware of his special educational needs.

25.     On or about October, 2009, having received no support services as required by the 504 Plan, Ryan's grades quickly dropped.  Several teachers contacted Ms. Batchelor regarding Ryan's failing grades, and Ms. Batchelor contacted Mr. Harpel to discuss the situation.

26.     Ms. Batchelor learned from Mr. Harpel that Ryan had not been assigned to the achievement center and was therefore not receiving any additional support needed to succeed.  Despite Mr. Harpel's promise to promptly schedule Ryan for the achievement center, it took several weeks for Ryan to be assigned to his new achievement center teacher, Ms. Garvin.

27.     Just before the December 2009 holiday break, at the end of the second marking period, Ms. Batchelor received a call from Ms. Garvin who said that Ryan was failing several classes primarily due to missing assignments.   According to District policy, Ms. Batchelor should have received from Ms. Garvin timely failure notices, none of which were ever received.

28.     On or about early March, 2010, just prior to the end of the third marking period, Ms. Batchelor received another call from Ms. Garvin advising that Ryan was failing.  When Ms. Batchelor asked Ms. Garvin why she was being informed so late of Ryan's failures, and why she did not receive any timely failure notices as required, Ms. Garvin stated that she had been very busy with other students.

29.     As a consequence of her discussions with Ms. Garvin and Ryan, who stated that Ms. Garvin "ignores him in the achievement center," Ms. Batchelor set up an appointment to speak with Mr. Harrison, Ryan's Assistant Principal, on March 15, 2010.

It was Ms. Batchelor's intent to inform Mr. Harrison that Ms. Garvin was not providing sufficient support services to Ryan as required by the 504 Plan.

30.     At the March 15 meeting Ms. Batchelor attempted to explain her position to Mr. Harrison.  However, Mr. Harrison constantly interrupted her and stated that both she and Ryan were lying.  Mr. Harrison then began asking very personal questions and challenging Ms. Batchelor's ability to be an effective parent.  Not wishing to be subjected to his unexpected intimidation and humiliation, Ms. Batchelor advised Mr. Harrison that the meeting was over and that she would be contacting an attorney.

31.     On the morning of March 16, 2010, Ms. Batchelor and Ryan met with and retained an attorney, David Thalheimer ("Mr. Thalheimer") to represent them.  At 1:00 p.m. Ms. Batchelor brought Ryan to school with a written late note.

32.     During the afternoon of March 16, 2010, Ms. Batchelor received a telephone call from Dr. Bluebello, asking that she not involve an attorney and stating that she and the District would be happy to provide Ryan with the support services he needed and deserved.  During this conversation Ms. Batchelor informed Dr. Bluebello of Mr. Harrison's outrageous conduct on March 15th.

33.     In an apparent act of retaliation by Mr. Harrison for Ms. Batchelor's complaining to Dr. Bluebello about his outrageous conduct on March 15th, on March 18, 2010, Ryan received a detention slip from Mr. Harrison for being late to school on March 15th.

34.     Ms. Batchelor called Mr. Harrison and asked why Ryan received a detention for being late on March 15th, when she had written a note.  Mr. Harrison stated

that it was school policy that a lateness is excused for an attorney meeting only if the note comes from the attorney because "parents tend to lie."

35.     After this conversation with Mr. Harrison, Ms. Batchelor telephoned Dr. Bluebello to report Mr. Harrison's retaliatory conduct.

36.     On April 16, 2010, there was a meeting between Ms. Batchelor, her attorney, Mr. Thalheimer, and representatives of the District, including Dr. Bluebello, Dr. Barta, Mr. Harrison and Mr. Harpel.   The topic of discussion was the failure of the District to implement Ryan's 504 Plan.

37.     As a result of this meeting, Ryan was removed from Ms. Garvin's achievement center, assigned to Ms. Walker's resource room, provided tutoring and was to undergo additional testing and evaluation in an effort to better identify the nature of Ryan's learning disability.

38.     On May 25, 2010, following further testing and evaluation, which evidenced an additional math disability, an IEP meeting was held and an IEP developed which would, if adhered to, address all of Ryan's learning disabilities.

39.     With respect to Ms. Batchelor's claims that the District had failed to implement Ryan's 504 Plan, the District offered a settlement whereby, in exchange for Ms. Batchelor's waiving all claims under, *inter alia*, the IDEA, Section 504 and the ADA, the District would provide certain compensatory education services, more particularly set forth in a written settlement agreement.

40.     The written settlement agreement was finalized, signed by the Board and became effective on September 24, 2010 ("Settlement Agreement").

41.     In late September, and pursuant to the Settlement Agreement, Ryan began math tutoring with Ms. Gray, a math teacher who Ryan liked and worked well with.

42.     After only two sessions of math tutoring with Ms. Gray, and without consulting Ms. Batchelor, the District changed Ryan's math tutor to Mr. Enterline, a tutor from outside the District.

43.     Mr. Enterline was often sarcastic, impatient and mean to Ryan, such that Ryan was made to feel badly about himself.  The switching of Ryan's math tutor from Ms. Groy to Mr. Enterline was an apparent act of retaliation against Ryan for his mother's successfully challenging the District's failure to implement Ryan's 504 Plan.

44.     Unbeknownst to Ms. Batchelor, Ryan had not been receiving the services called for in his IEP since the beginning of the school year in September.  Ryan was hesitant to tell his mother of this fact, since every time his mother would act as an advocate on behalf of Ryan, things got worse for him at school.

45.     Because Ryan was not receiving the support services called for in his IEP, his grades suffered during the first and second marking periods of his junior year, the most crucial year for college admissions.

46.     In December, 2010, Ryan wrote an essay, the subject of which included teacher bullying of students.  Ryan's writing teacher sent the essay to Mr. Gregg.

47.     Mr. Gregg called Ryan into his office and demanded that Ryan identify the teacher referred to in Ryan's essay.  Ryan identified Mr. Doyle, noting that he was not one of Ryan's teachers.

48.     Approximately one month later, in an apparent act of retaliation, Mr. Gregg assigned Ryan to Mr. Doyle, the  teacher that Ryan identified as being a bully.

49.     Despite being assigned to Ms. Walker's academic enrichment class pursuant to his IEP, Ryan was never actually in this class, and accordingly received little or no special education services.

50.     In early January, 2011, Ms. Batchelor received notice that Ryan was failing and also learned for the first time that Ryan had not been receiving many of the support services required by his IEP since the beginning of the school year.

51.     Ms. Batchelor immediately requested an IEP meeting, which was scheduled for January 25, 2011.

52.     In early January, 2011, Ms. Batchelor told Mr. Harpel and Ms. Walker that Ryan's school appointed tutor, Mr. Enterline, was ineffective and that she would like to hire private tutors as provided for in the Settlement Agreement.  With respect to the hiring of a private tutor, Ms. Walker referred Ms. Batchelor to Dr. Barta.

53.     When contacted by Ms. Batchelor, Dr. Barta stated that Ms. Batchelor could not hire private tutors and disclaimed any knowledge of the Settlement Agreement. Dr. Barta then referred Ms. Batchelor to Dr. Bluebello.

54.     In early January, 2011, Ms. Batchelor spoke with Dr. Bluebello about hiring private tutors pursuant to the Settlement Agreement because the current tutor was unacceptable.  Ms. Batchelor requested an accounting of the compensatory fund that was supposed to have been created pursuant to  the Settlement Agreement to pay for private tutoring.  Dr. Bluebello stated that all tutoring services would be handled by her and that she would get back to Ms. Batchelor.  She never did.

55.     On January 25, 2011, the IEP meeting was held in response to Ms. Batchelor's repeated complaints that Ryan was not receiving the support services

required by his IEP and Settlement Agreement.  During this meeting, Ms. Batchelor cited many examples of how Ryan's IEP was not being implemented.   However, Dr. Bluebello, Dr. Barta, Mr. Harrison, Mr. Matson, Mr. Harpel and Ms. Walker all denied any failure on the part of the District to implement Ryan's IEP, instead placing the entire blame for Ryan's failure upon Ryan and Ms. Batchelor.

56.     On January 26, 2011, at the suggestion of Mr. Gregg, Mr. Harpel assigned Ryan to Mr. Doyle's class.  Both Ryan and Ms. Batchelor pleaded for a different teacher, but to no avail.

57.     The very first day that Ryan attended Mr. Doyle's class, and in an apparent act of retaliation, Ryan was publicly disciplined and humiliated for violation of a class rule that all students must bring their books to every class.  As Ryan had never before attended Mr. Doyle's class, he was unaware of any such class rule.

58.     From January, 2011, through mid-April, 2011, Dr. Bluebello refused to reimburse Ms. Batchelor for the costs of private tutoring paid for by Ms. Batchelor as called for in the Settlement Agreement.

59.     During this time, Ms. Batchelor repeatedly advised the Board that the special education services required by Ryan's IEP and Settlement Agreement were not being provided.  However, the Board deferred to Dr. Bluebello and Dr. Kerr to remedy this situation.

60.     Because Ms. Batchelor could not afford to provide Ryan with needed private tutoring without the reimbursement called for in the Settlement Agreement, on April 19, 2011, Ms. Batchelor filed a Breach of Contract Action against the District for failure to abide by the reimbursement provisions of the Settlement Agreement.

61.     Shortly thereafter, on May 6, 2011, Ms. Batchelor received a small reimbursement check from the District.

62.     In a further act of retaliation, the District sought to delay the payment of reimbursements to Ms. Batchelor by seeking two continuances to Ms. Batchelor's simple contract action. As a result a hearing was not scheduled until July 27, 2011.

63.     At the hearing on July 27, 2011 counsel for the District was not prepared and the Judge was compelled to continue the hearing until August 10, 2011, thereby further delaying the Districts reimbursement of Ryan's compensatory private tutoring services.

64.     At the conclusion of the hearing on August 10, 2011 Judge Nicholas S. Lippincott ordered the District to pay Ms. Batchelor the sum of $562.10 as reimbursement for private tutoring services.

65.     While the District has paid in full the amount of the judgment, in an apparent act of continuing retaliation the District failed to timely reimburse Ms. Batchelor for subsequent private tutoring services as required by the Settlement Agreement.

66.     Due to the District's failure to implement the terms of the Settlement Agreement and IEP, which has had severe detrimental effects upon Ryan's educational achievement and health, and because of the continuing acts of bullying and retaliation suffered by Ryan and Ms. Batchelor, Ryan withdrew from Penncrest for his senior year, and subsequently currently enrolled in Twenty First CCC.

67.     Pursuant to District policy, Ryan, as a resident of the District and a student at Twenty First CCC, had the right to participate in Penncrest's extra curricular activities.

However, beginning in September, 2011, and in a course of continued retaliation against Ryan, Ryan was denied the opportunity to participate in the after school activity of both the choir and the dance team.

### COUNT I:  BREACH OF SETTLEMENT AGREEMENT
**(Plaintiff v. District )**

68.     Plaintiffs hereby incorporate by reference each and every allegation set forth above as if fully set forth at length herein.

69.     The Settlement Agreement constitutes a legally binding agreement between the District, Board and Plaintiffs.

70.     The District breached the terms of the Settlement Agreement by, *inter alia*:

> (a)     Failure to assign a competent School District tutor who got along well with Ryan;
>
> (b)     Failing to timely replace Mr. Enterline with a more acceptable tutor when it became clear Mr. Enterline was not acceptable;
>
> (c)     Failure to timely render an accounting of the balance of the compensatory education fund;
>
> (d)     Their past failure to timely reimburse Ms. Batchlor for private tutors as required.

71.     As a direct result of the District and the Board's breaches of the Settlement Agreement, Ryan has suffered and continues to suffer great harm to his level of educational achievement and personal well being.

72.     As a direct result the District and Board's breach of the Settlement Agreement, Ms. Batchelor has suffered and continues to suffer financial loss and great emotional upset.

WHEREFORE, Plaintiffs, Janet Batchelor and Ryan Batchelor, seek a judgment in their favor and against Defendant, The Rose Tree Media School District for compensatory damages, incidental damages, consequential damages and such other further relief as this Court deems appropriate.

## COUNT II – RETALIATION IN VIOLATION OF THE PHRA
### (Plaintiffs v. All Defendants)

73.     Plaintiffs hereby incorporate by reference each and every allegation set forth above as if fully set forth at length herein.

74.     At all times material hereto, Ryan was a qualified person with a disability pursuant to the PHRA.

75.     At all times material hereto, Defendants were subject to the PHRA.

76.     Pursuant to §955(d) of the PHRA, it is unlawful for any person or entity subject to the PHRA to retaliate against any qualified individual and/or their parents for complaining about a failure to implement a 504 Plan or IEP.

77.     Both Ryan and Ms. Batchelor participated in a protected activity within the meaning of the PHRA when they complained about the failure of Defendants to implement and adhere to the terms of Ryan's IEP and otherwise advocated for Ryan's rights under the IEP.

78.     At all times material hereto, Defendants knew of Ms. Batchelor's advocacy on the part of her son inasmuch as they either participated in or were made aware of said advocacy.

79.     Defendants retaliated against Ryan and Ms. Batchelor for their advocacy with respect to Ryan's legally protected rights pursuant to the PHRA by, *inter alia*:

(a)     Replacing Ms. Gray, a tutor with whom Ryan worked well and was making progress, with Mr. Enterline;

(b)     Refusing to timely reimburse highly qualified private tutors for Ryan;

(c)     Refusing to implement the terms of Ryan's IEP so that Ryan would struggle in school;

(d)     By bullying, intimidating, belittling and humiliating Ms. Batchelor when she would meet with District and Board representatives to advocate on behalf of Ryan;

(e)     Assigning Ryan to Mr. Doyle's class; and

(f)     Refusing to permit Ryan to participate in extracurricular activities at Penncrest.

80.     There exists a causal connection between the advocacy of Ryan and Ms. Batchelor and the acts of retaliation by Defendants as set forth above insofar as prior to the Settlement Agreement, the District complied with its obligations pursuant to Ryan's 504 Plan, but immediately after the Settlement Agreement, Defendants embarked upon the course of retaliatory conduct set forth above.

81.     As a direct result of the intentional retaliation by Defendants set forth above, Ryan has suffered great harm to his educational achievement level and his mental and emotional well being, and Ms. Batchelor has suffered financial loss and great harm to her mental and emotional well being.

WHEREFORE, Plaintiffs, Janet Batchelor and Ryan Batchelor, request a judgment in their favor and against all Defendants for compensatory damages, statutory

damages, reasonable attorney's fees and costs, and such other further relief as this Court deems just and appropriate.

## COUNT III: VIOLATION OF THE PUBLIC SCHOOL CODE
### (Plaintiffs vs. the District)

82.     Plaintiffs hereby incorporate by reference each and every allegation set forth above as if fully set forth at length herein.

83.     The conduct of the District as set forth above is in violation of the Public School Code.

84.     As a direct result of the District's violation of the Public School Code, Ryan has suffered great harm to his educational achievement level and his mental and emotional well being, and Ms. Batchelor has suffered financial loss and great harm to her mental and emotional well being.

WHEREFORE, Plaintiffs, Janet Batchelor and Ryan Batchelor, request a judgment in their favor and against the District for compensatory damages, statutory damages, reasonable attorney's fees and costs, and such other further relief as this Court deems just and appropriate.

## COUNT IV : COMMON LAW CIVIL CONSPIRACY
### (Plaintiffs v. individual defendants)

85.     Plaintiffs hereby incorporate by reference each and every allegation set forth above as if fully set forth at length herein.

86.     Pursuant to Pennsylvania common law, it is unlawful for two or more persons to agree to act in concert to commit an unlawful act.

87.     Upon information and belief, the individual defendants acted in concert, and outside the scope of their employment with the District, to unlawfully retaliate against Ryan and Ms. Batchelor as more particularly set forth above.

88.     The retaliatory acts of the individual defendants were outside the scope of their employment insofar as the District has a policy against such retaliatory conduct.

89.     The retaliatory conduct of the individual defendants set forth above was willful, malicious and conducted with an actual malice toward Ryan and Ms. Batchelor.

90.     As a direct result of the individual defendants' civil conspiracy in furtherance of their concerted retaliatory conduct toward Ryan, Ryan has suffered severe emotional and educational harm.

91.     As a direct result of the individual defendants' civil conspiracy in furtherance of their concerted retaliatory conduct toward Ms. Batchelor, Ms. Batchelor has suffered financial loss and severe emotional harm.

WHEREFORE, Plaintiffs, Janet Batchelor and Ryan Batchelor, seek a judgment in their favor and against Defendants, Linda Bluebello, Eric Bucci, Ralph Harrison, Richard Gregg, Karen Walker and Patricia Barta, individually and jointly and severally, for compensatory damages, punitive damages, and such other further relief as this Court deems just and appropriate.

## COUNT V : NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Plaintiffs v. all Defendants)

92.     Plaintiffs hereby incorporate by reference each and every allegation set forth above as if fully set forth at length herein.

93.     At all times material hereto, Defendants owed to Plaintiffs a duty to adhere to the statutory requirements of Section 504, the ADA and IDEA as incorporated

into Pennsylvania law so that Ryan could obtain a FAPE and to refrain from retaliatory conduct.

94.    The failure of the Defendants to implement the Settlement Agreement and IEP, together with the retaliatory conduct set forth above, constitutes a breach of the duty owed by Defendants to Plaintiffs.

95.    At all times material hereto, it was foreseeable that a failure by Defendants to implement the terms of the Settlement Agreement and IEP and/or to retaliate against Plaintiffs would result in harm to Plaintiffs, including, but not limited to, emotional harm to both Ryan and to Ms. Batchelor.

96.    The conduct of Defendants in failing to implement the Settlement Agreement and IEP and the retaliatory conduct as set forth above has resulted in severe emotional distress to Ryan, which has manifested itself in severe anxiety, depression, insomnia, headaches, loss of weight and suicidal ideation.

97.    The conduct of Defendants in failing to implement the Settlement Agreement and IEP and the retaliatory conduct set forth above has resulted in severe emotional distress to Ms. Batchelor, which has manifested itself in severe anxiety, stress, insomnia, and humiliation.

WHEREFORE, Plaintiffs, Janet Batchelor and Ryan Batchelor, request a judgment in their favor and against Defendants, Rose Tree Media School District, Linda Bluebello, Eric Bucci, Ralph Harrison, Richard Gregg, Karen Walker and Patricia Barta, individually, jointly and severally, for compensatory damages and punitive damages against the individual defendants only, together with such other further relief as this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues so triable.

Respectfully submitted,

LAMM RUBENSTONE LLC

By: _____

Frank Schwartz, Esquire
Attorney I.D. No.: 52729
3600 Horizon Blvd., Ste. 200
Trevose, PA  19053
(215) 638-9330
Attorneys for Plaintiffs

Date: _3/28/13_____

# Exhibit "A"

Chairman
GERALD S. ROBINSON
Vice Chair
DR. RAQUEL O. YIENGST
Secretary
DANIEL D. YUN
Assistant Secretary
REV. DR. JAMES EARL GARMON, SR.
Executive Director
JOANN L. EDWARDS

Commissioners
ISMAEL ARCELAY
M. JOEL BOLSTEIN
STEPHEN A. GLASSMAN
J. WHYATT MONDESIRE
S. KWELIN NASSAR
SYLVIA A. WATERS
DANIEL L. WOODALL, JR.



**COMMONWEALTH OF PENNSYLVANIA**
Human Relations Commission
301 Chestnut Street, Suite 300
Harrisburg, PA 17101-2702
(717) 787-4410 voice
(717) 787-4087 TTY
www.phrc.state.pa.us



RECEIVED
MAR 04 2013

February 28, 2013

Janet Batchelor on behalf of Ryan Batcelor, a minor
2 Springton Lake Road
Media PA 19063

RE:     Janet Batchelor on behalf of Ryan Batcelor, a minor v Rose Tree Media School District
        Case No. 201104405

Dear Ms. Janet Batchelor on behalf of Ryan Batcelor, a minor:

It has been one year since you filed your complaint with the Pennsylvania Human Relations Commission. This is to notify you that you now have the right to bring an action in the appropriate Pennsylvania Court of Common Pleas based on the alleged violations of the PHRAct contained in your Commission complaint. This right is provided under Section 12(c) of the Human Relations Act, 43, P.S. § 962(c).

Please be advised that you are not required to file such an action in the State Court of Common Pleas. The Commission is continuing to process your case, and we will make every effort to resolve it as soon as possible. If we are not notified otherwise, we will assume that you want the Commission to continue handling your case.

If you do file a complaint in a Court of Common Pleas, the Commission will dismiss your complaint. This means that you will be unable to have the Commission decide your case even if your complaint is dismissed in State Court because of a procedural error. Procedural errors may include filing the complaint in State Court in the wrong county or filing in State Court after your time to file has expired. For this reason, you should make every effort to assure that any complaint you file in State Court will be properly filed before you file it.

If you believe you might want to take your case to State Court, we suggest that you consult a private attorney about representing you in that action. This should be done before you file the complaint so that your attorney may advise you on the best course of action for you to take.

Should you file a complaint in State Court, you are required by Section 12(c)(2) of the Pennsylvania Human Relations Act to serve the Human Relations Commission with a copy of the Court complaint. This copy must be served on the Commission at the same time you file it in Court. The copy is to be sent to:

        Kathy Morrison, Chief Counsel - Pennsylvania Human Relations Commission
        301 Chestnut Street - Suite 300
        Harrisburg, PA 17101-2702

If you have any questions concerning this matter, please feel free to contact the investigator who is handling your case.

Very truly yours,

James Kayer
Director of Compliance
JK: cmw
cc: Frank Scharwtz, Esquire

1 Yr Letter

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RYAN BATCHELOR and JANET BATCHELOR  :      CIVIL ACTION NO.
                                                    :      2:13-cv-01567-CDJ

                v.                                       :

ROSE TREE MEDIA SCHOOL DISTRICT        :
308 North Olive St., Media, PA 19063           :      JURY TRIAL DEMANDED
and                                                  :
LINDA BLUEBELLO                       :
80 Indian Spring Rd., Media, PA 19063       :
and                                                  :
ERIC BUCCI                               :
1538 Freemont Dr., West Chester, PA 19382   :
and                                                  :
RALPH HARRISON, a/k/a NORMAN HARRISON:
934 Prichard Ave., West Chester, PA 19382    :
and                                                  :
RICHARD GREGG                         :
7814 Westview Ave., Upper Darby, PA 19082   :
and                                                  :
KAREN WALKER                          :
127 Yates Ave., Woodlyn, PA 19094          :
and                                                  :
PATRICIA BARTA                        :
90 Park Place, Media, PA 19063            :

## CERTIFICATE OF SERVICE

    I, Frank Schwartz, Esquire, hereby certify that on this 28th day of March, 2013, I have served a true and correct copy of Plaintiff's Amended Complaint via First Class United States Mail, upon the following:

Craig Ginsburg, Esquire
Levin Legal Group
1301 Masons Mill Business Park
1800 Byberry Road
Huntingdon Valley, PA 19006
Attorney for Defendants

LAMM RUBENSTONE LLC

By: _____
Frank Schwartz, Esquire
Attorney I.D. No.: 52729
3600 Horizon Blvd., Ste. 200
Trevose, PA  19053
(215) 638-9330
Attorneys for Plaintiffs

Date: _3/28/13_____

442913-1